

Rec # / 10788    63

UNITED STATES DISTRICT COURT
EASTERN DISTRICT-SOUTHERN DIVISION

CHRISTOPHER DONALD TODD,

                              Petitioner,

                                            Case:2:17-cv-10788
                                            Judge: Drain, Gershwin A.
                                            MJ: Morris, Patricia T.
v                                           Filed: 03-10-2017 At 10:36 AM
                                            HC Todd v Burton (wh)

DeWAYNE BURTON,

                              Respondent.
_____/        ORIGINAL

Christopher Donald Todd
Prisoner No. 266686
Richard Handlon Correctional Facility
1728 Bluewater Highway
Ionia, Michigan 48846
_____/

DeWAYNE Burton, Warden
Richard Handlon Correctional Facility
1728 Bluewater Highway
Ionia, Michigan 48846
_____/

Bill Schuette
Micnigan Attorney General
G. Mennen Williams Building
525 West Ottawa Street (7th Floor)
Lansing, Michigan 48909
_____/


PETITION UNDER 28 U.S.C. §2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY


            CHRISTOPHER DONALD TODD
            NO. 266686
            RICHARD HANDLON CORRECTIONAL FACILITY
            1728 BLUEWATER HIGHWAY
            IONIA, MICHIGAN 48846

UNITED STATES DISTRICT COURT
EASTERN DISTRICT-SOUTHERN DIVISION

CHRISTOPHER DONALD TODD,

                        Petitioner,

                                        Civil Action
                                        No. _____

v

                                        Honorable:
                                        _____

DeWAYNE BURTON,

                        Respondent.

_____/


PETITION UNDER 28 U.S.C. §2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY


      1.   (a) The name and location of the court that entered the judgment of conviction was the Macomb County Circuit Court (Sixteenth Judicial Circuit), Macomb County Court Building, 40 North Main Street. Mt. Clemens, Michigan 48043-5656.

      Judge Jennifer Faunce

      (b) The criminal case number is Macomb County Circuit Court No. 2014-000217-FC.

      2.   (a) The date of the judgment of conviction was May 9, 2014.

      (b) The date of the sentencing was June 20, 2014.

      3. The length of the sentences were:

      Count I: Armed robbery. 216 months to 360 months (18 years to 30 years).

-1-

Count II: <u>Felony firearm</u>. 2 years concurrent with Count IV, but consecutive to Counts I, III and V.

Count III: <u>Assault with intent to do great bodily harm less than murder</u>. 36 months to 120 months (3 years to 10 years) to run concurrent with Counts I and V.

Count IV: <u>Felony firearm</u>. 2 years concurrent to Count II, but consecutive to Counts I, III and V.

Count V: <u>Possession of a firearm by a felon</u>: 18 months to 60 months (1½ years to 5 years) to run concurrent with Counts I and III.

4. As noted above by ¶ 3., <u>supra</u>, the Petitioner was convicted of more than one crime.

5. The crimes which the Petitioner was convicted and sentenced for were:

Count I: <u>Armed robbery</u>. <u>MCL</u> 750.529.

Count II: <u>Felony firearm</u>. <u>MCL</u> 750.227b.

Count III: <u>Assault with intent to do great bodily harm less than murder</u>. <u>MCL</u> 750.84.

Count IV: <u>Felony firearm</u>. <u>MCL</u> 750.227b.

Count V: <u>Possession of a firearm by a felon</u>. <u>MCL</u> 750.224f.

6.     (a) The Petitioner pled not guilty.

       (b) There was no guilty plea to any of the charges.

       (c) The trial was by jury.

7. The Petitioner testified at the jury trial.

8. The Petitioner appealed (as a matter of right) from the judgment of conviction.

9. The appeal as noted by ¶ 8., _supra_, was in the following manner:

(a) The name of the court was the Michigan Court of Appeals, 3020 West Grand Boulevard, Suite 14-300, Detroit, Michigan 48202.

(b) The docket number was 322587.

(c) The result was that the conviction was affirmed by an unpublished opinion.

(d) The date of the result was December 17, 2015.

(e) The citation of the case was People of the State of Michigan v Christopher Donald Todd, ___ Mich App ___, docket number 322587, December 17, 2015.

See Appendix A.

The grounds raised were:

### GROUND I

MR. TODD WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

A.

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY CONCEDING MR. TODD'S GUILT OF EVERY ELEMENT OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS CULPABILITY WITH A DEFENSE THAT WAS NOT GROUND IN LAW.

B.

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO MOVE TO SUPPRESS A "ROBBERY NOTE" OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE OF MR. TODD'S PROPERTY FROM HIS HOSPITAL ROOM.

C.

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO OBJECT TO THE ADMITTANCE OF A NON-TESTIFYING LAB SCIENTIST'S REPORT THAT MR. TODD'S DNA MATCHED DNA FOUND AT THE SCENE OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING TO OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE INVESTIGATION REGARDING THE REPORT, WHEN HE DID NOT PREPARE IT.

D.

TRIAL COUNSEL'S ERRORS, INDIVIDUALLY AND/OR CUMULATIVELY, PREJUDICED MR. TODD.

## GROUND II

THE TRIAL COURT VIOLATED MR. TODD'S DUE PROCESS RIGHTS BY EMPANELLING A JURY WHOSE MEMBERS WERE REFERRED TO ONLY BY JUROR NUMBERS.

## GROUND III

MR. TODD'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BY JUDICIAL FACT FINDING WHICH INCREASED THE FLOOR OF THE PERMISSIBLE SENTENCE AND HE IS ENTITLED TO REMAND PURSUANT TO PEOPLE V LOCKRIDGE.

In addition to these issues, the Petitioner moved the Michigan Court of Appeals with a Motion To Remand the case back to the trial court for an evidentiary hearing regarding the ineffective assistance of counsel claims on February 25, 2015. The Michigan Court of Appeals denied the remand request in an ORDER on March 26, 2015. See Appendix B.

(g) The Petitioner sought further review by a higher state court.

(1) The name of the court was the Michigan Supreme Court, Michigan Hall of Justice, 925 West Ottawa Street, Lansing, Michigan 48913.

(2) The docket number was 153175.

(3) The result was a denial of leave to appeal.

-4-

(4) The date of the result was September 6, 2016.

(5) The citation to the case was People of the State of Michigan v Christopher Donald Todd, __ Mich __, docket number 153175, September 6, 2016. See Appendix C.

(6) The grounds raised were:

<u>GROUND I</u>

MR. TODD WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

A.

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY CONCEDING MR. TODD'S GUILT OF EVERY ELEMENT OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS CULPABILITY WITH A DEFENSE THAT WAS NOT GROUND IN LAW.

B.

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO MOVE TO SUPPRESS A "ROBBERY NOTE" OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE OF MR. TODD'S PROPERTY FROM HIS HOSPITAL ROOM.

C.

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO OBJECT TO THE ADMITTANCE OF A NON-TESTIFYING LAB SCIENTIST'S REPORT THAT MR. TODD'S DNA MATCHED DNA FOUND AT THE SCENE OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING TO OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE INVESTIGATION REGARDING THE REPORT, WHEN HE DID NOT PREPARE IT.

D.

TRIAL COUNSEL'S ERRORS, INDIVIDUALLY AND/OR CUMULATIVELY, PREJUDICED MR. TODD.

-5-

## GROUND II

THE TRIAL COURT VIOLATED MR. TODD'S DUE PROCESS RIGHTS BY EMPANELLING A JURY WHOSE MEMBERS WERE REFERRED TO ONLY BY JUROR NUMBERS.

## GROUND III

MR. TODD'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BY JUDICIAL FACT FINDING WHICH INCREASED THE FLOOR OF THE PERMISSIBLE SENTENCE AND HE IS ENTITLED TO REMAND PURSUANT TO PEOPLE V LOCKRIDGE.

(h) The Petitioner did not file a petition for certiorari in the United States Supreme Court.

10. Other than the direct appeals listed above, the Petitioner did not previously file other petitions, motions or applications concerning this judgment of conviction in the Michigan courts including a Motion For Relief From Judgment pursuant to Michigan Court Rule 6.500 et. seq.

11. Only direct appeals in the Michigan court were pursued. See ¶ 10., supra.

12. The following grounds are being raised in this habeas corpus petition.

-6-

<u>GROUND ONE</u>

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE
EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND
FOURTEENTH (DUE PROCESS CLAUSE) AMENDMENTS OF THE UNITED STATES
CONSTITUTION WHEN TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE
WHEN:(1) COUNSEL CONCEDED THE PETITIONER'S GUILT OF EVERY ELEMENT
OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS
CULPABILITY WITH A DEFENSE THAT WAS NOT GROUNDED IN LAW;(2)
COUNSEL FAILED TO MOVE TO SUPPRESS A ROBBERY NOTE OBTAINED AS
A RESULT OF AN ILLEGAL SEARCH AND SEIZURE OF THE PETITIONER'S
PROPERTY FROM HIS HOSPITAL ROOM;(3) COUNSEL FAILED TO OBJECT
TO THE ADMITTANCE OF A NON-TESTIFYING LABORATORY SCIENTIST'S
REPORT THAT THE PETITIONER'S DNA MATCHED DNA FOUND AT THE SCENE
OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING TO
OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE
INVESTIGATION REGARDING THE REPORT WHEN HE DID NOT PREPARE IT,
AND (4) WHEN COUNSEL'S ACCUMULATED ERRORS PREJUDICED THE
PETITIONER.

(1)

TRIAL COUNSEL CONCEDED THE PETITIONER'S GUILT OF EVERY ELEMENT
OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS
CULPABILITY WITH A DEFENSE THAT WAS NOT GROUNDED IN LAW.

(a)          SUPPORTING FACTS

As noted by ¶¶ 3. and 5., <u>supra</u>, the Petitioner faced
a number of charges with the armed robbery as the leading charge.

The elements of an armed robbery are (1) that the
Petitioner (2) put the victim in fear, (3) did so while in the
course of committing a larceny, (4) the victim was present while
the Petitioner was in the course of committing the larceny,
and (5) while in the course of committing the larceny, the
Petitioner possessed a weapon designed to be dangerous and
capable of causing death or serious injury.

Trial counsel conceded a number of times that the
Petitioner 1) was present, 2) had a gun, 3) went to the victim's
home 4) to rob him, 5) while the victim was home. Counsel also
had the Petitioner testify to these aspects.

-7-

Trial counsel began the trial by conceding to the Petitioner's guilt in his opening statement to the jury. Counsel essentially stated that 1) the Petitioner knocked on the victim's door, 2) under the pretex that he was there to sell the victim some gold, 3) the victim opened the door and let the Petitioner in, 4) once in, the Petitioner branished a gun 5) and told the victim that he wanted his gold and money.

The Petitioner essentially testified to the same thing that defense counsel conceded to, in that, 1) the Petitioner knocked on the victim's door and he handed the victim a sealed envelope, 2) Petitioner was there to boy gold, 3) once the victim let the Petitioner in, the latter pulled out a handgun, and 4) stated that he wanted the jewelry and the money.

Consistent with the defense theory, the Petitioner testified that he did not take any property from the victim's home.

In his closing argument to the jury, trial counsel again conceded the Petitioner's guilt by misstating the elements of armed robbery. Counsel told the jury that if the Petitioner did not steal anything from the victim, that is, if the jewelry and money never left the victim's room or house, then there was no robbery.

Defense counsel's argument was simply not the law. The elements of armed robbery includes putting the victim in fear while the Petitioner was in the course of committing a larceny. A completed larceny is not required.

-8-

Trial counsel did not know that a completed larceny is not required in order to be guilty of armed robbery.

The Michigan Legislature and the decisional authority from the Michigan courts have held that when an intended robber is in possession of a dangerous weapon, that person may be guilty of armed robbery even if the larcenous taking is not completed.

There simply was no strategic reason to misstate the law by counsel or by counsel's advise to have the Petitioner testify based upon a legal position that did not exist, i.e., if there was no completed larceny then there could be no armed robbery.

When defense counsel conceded every element of armed robbery, this amounted to a deficient performance.

(2)

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO MOVE TO SUPPRESS A ROBBERY NOTE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE OF THE PETITIONER'S PROPERTY FROM HIS HOSPITAL ROOM.

(a)       SUPPORTING FACTS

The police seized a robbery note from the Petitioner's pants pocket at the hospital. This note was used as a key piece of prosecution evidence against the Petitioner's at the trial. It also corroborated the victim's version of events.

However, the robbery note was seized without a warrant, and there was no exception to the warrant requirement that would have allowed for the search and seizure of the robbery note.

The police in this case responded to the hospital based on hospital personnel informing them that they were treating an individual with gunshot wounds. The hospital staff, not the

-9-

Petitioner, consented to the search and seizure of the Petitioner's clothing. The police found the note inside the pockets of the Petitioner's clothing.

The hospital staff could not consent to the search and seizure of the Petitioner's property, in which the Petitioner had a reasonable expectation of privacy that he did not abandon by going to the hospital. Only the Petitioner could consent to the search and seizure of his property in the hospital and the Petitioner did not consent.

The police had time to obtain a warrant given the fact that the Petitioner remained in the hospital for a full week after his surgery. The robbery note was not in "plain view" because it was found inside the Petitioner's pants pocket.

The Petitioner asked trial counsel to move to suppress the robbery note, but counsel erroneously told the Petitioner that because the police were investigating a crime the robbery note could not be suppressed. However, this was a misstatement of the law.

(3)

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO OBJECT TO THE ADMITTANCE OF A NON-TESTIFYING LABORATORY SCIENTIST'S REPORT THAT THE PETITIONER'S DNA MATCHED THE DNA FOUND AT THE SCENE OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING TO OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE INVESTIGATION REGARDING THE REPORT WHEN HE DID NOT PREPARE IT.

(a)          SUPPORTING FACTS

Detective Mel Nearing (Nearing) of the Warren Police Department (WPD) testified that a technician from the Michigan State Police (MSP) laboratory spoke with Nearing about what

-10-

would be the best evidence in positively identifying the Petitioner at the crime scene. Nearing stated that he believed the best evidence would be the location of blood at the crime scene.

Through Nearing's testimony, the prosecutor introduced exhibits, **without objection from trial counsel**, concerning the laboratory results from the MSP. Nearing told the jury the MSP' procedure in obtaining DNA profiling and identification; what the exhibits meant; how they were organized; where the blood sample came from; and ultimately, that the DNA in the blood samples from the victim's house and from the purported getaway car matched the Petitioner's DNA.

Nearing effectively acted as a surrogate analyst when he testified to the MSP laboratory results. There was no indication that Nearing either participated or observed the MSP' work in the case. To the contrary, Nearing worked for the WPD, not the MSP. Nearing was not a scientist. The prosecution did not claim that the MSP authors of the exhibits were unavailable to testify.

Before the prosecution could present substantive evidence that the Petitioner's DNA matched the DNA found in the crime scene house and in the alleged getaway car, they had to provide the Petitioner with an opportunity to cross-examine the scientist who made the DNA determination. The DNA testing was done specifically to serve as evidence in a criminal proceeding in an attempt to confirm the identity of the person who had robbed,

-11-

fought with and been shot by the victim, and the person who had escaped in the purported getaway car.

Since the author of the MSP report did not testify, trial counsel could not ask the author about how many samples were examined from the crime scene house and alleged getaway car; where the samples originated from; the course of events as they occurred based on the blood evidence; other questions about the procedures of the MSP laboratory, and how much the laboratory relied on Nearing's suggestions as to the best evidence in positively identifying the Petitioner at the crime scene.

The prosecutor repeatedly highlighted the DNA evidence in his closing argument. He told the jury that Nearing had accurately pointed out, based on the victim's conversation with him, that the Petitioner's blood was found near the nightstand which was positive for the DNA match to the Petitioner. The prosecutor told the jury twice, that the blood sample outside the crime scene home matched the Petitioner.

Trial counsel stipulated that it was the Petitioner's blood in the crime scene house and in the assumed getaway car. However, this stipulation is a part of the ineffective assistance of counsel claim because trial counsel could not have waived the results of the DNA test and the admission of the laboratory report through Nearing.

(4)

## TRIAL COUNSEL'S ACCUMULATED ERRORS PREJUDICED THE PETITIONER

(a)         SUPPORTING FACTS

Trial counsel's errors prejudiced the Petitioner to the extent that, but for counsel's errors, the result of the trial would have been different.

First, if trial counsel would not have conceded the Petitioner's guilt to the lead charge and pursued a defense theory completely ungrounded in the law, which required the Petitioner to testify, there is a reasonable probability that the outcome of the trial would have been different. The other admissible evidence was weak. Trial counsel and the Petitioner could have worked together to present a different theory of the defense. Additional prejudice was the Petitioner's testimony: this was direct harm flowing from trial counsel's ignorance of the law. Trial counsel put the Petitioner on the stand to testify and the Petitioner proceeded to convict himself with his own words. In addition, the Petitioner, by testifying, was forced to admit to the jury his lengthy criminal history, and that he had done cocaine and heroin with a parolee prior to the robbery.

Had trial counsel appropriately advised the Petitioner that a completed larceny was not required to be convicted of armed robbery, he would not have agreed to the trial strategy presented at trial and he would not have testified.

-13-

Secondly, the Petitioner's defense was prejudiced by trial counsel's failure to file a motion to suppress the robbery note and by failing to object to the admission of the DNA report. Because of the differences in testimony between the Petitioner and the victim, the admission of the envelope corroborated the version told by the victim. The other admissible physical evidence is notably weak. Witnout the corroborating evidence gained form the illegal search, there is a reasonable probability that without trial counsel's errors a different outcome would have resulted. Trial counsel advised the Petitioner erroneously regarding the admissibility of the robbery note. Counsel told the Petitioner that the note was admissible because it was obtained in the pursuit of a crime. This erroneous advice contributed to the Petitioner's decision to agree to the trial strategy and his agreement to testify.

The DNA evidence likely negated any reasonable doubts the jurors may have reached as to what happened in the crime scene house that day, especially given the fact that Nearing suggested the samples tnat should be tested in order to obtain a positive identification of the Petitioner. Similarly, the laser-like focus of the prosecution in relying on the DNA evidence in closing argument most likely sealed the Petitioner's fate. As such, there is a reasonable likelihood that the outcome of the trial would have been different nad trial counsel objected and prevented Nearing from revealing the MSP' scientific conclusions. Trial counsel's failure to object to the admission of the DNA reports and testimony, based on the faulty defense

-14-

theory, contributed to the Petitioner's decision to testify, which sealed the Petitioner's guilt.

It appears that perhaps trial counsel did not contest the admission of the robbery note or the DNA report because of the defense theory that the Petitioner was not guilty of the lead charge of armed robbery because he did not complete the larceny. However, this initial decision was completely unreasonable, and therefore all of trial counsel's failures that stemmed from this erroneous theory ungrounded in the law cannot be considered sound trial strategy.

Trial counsel's concession of the case, and the resulting lack of objection, greatly prejudiced the Petitioner, depriving him of his constitutional right to the effective assistance of counsel.

A habeas corpus should issue or an evidentiary hearing to inquire into why counsel did the things that he should not have done, or did not do the things that he should have done.

12.   (b) The Petitioner exhausted the state remedies regarding Ground One.

(c) Direct appeal of Ground One:

(1) This ground was raised on an appeal from the judgment of conviciton.

(d) Post-Conviction Proceedings:

(1) Ground One was not raised in a Motion For Relief From Judgment pursuant to Michigan Court Rule 6.500.

(e) Other Remedies: Aside from the direct appeal in the Michigan Court of Appeals and Michigan Supreme Court,

-15-

the Petitioner did not use any other procedures to exhaust state remedies regarding Ground One. See ¶¶ 8. and 9., <u>supra</u>.

GROUND TWO

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT WHEN THE TRIAL COURT EMPANELLED A JURY WHOSE MEMBERS WERE REFERRED TO ONLY BY JUROR NUMBERS.

(a)           SUPPORTING FACTS

The state trial court referred to prospective jurors on the record only badge numbers. The existing record does not disclose that the trial court took steps to minimize the prejudicial impact, such as giving a cautionary preliminary instruction that the practice was for administrative reasons and not a reflection of the Petitioner's guilt or dangerousness.

There was no indication that there as a 1) serious threat to juror safety, or that the Petitioner 2) was involved in organized crime, 3) had past attempts to interfere with the judicial process or witnesses, 4) or expose the jurors to intimidation and harrassment.

For these reasons, a habeas corpus should issue or an evidentiary hearing to inquire into why the trial court empanelled a jury by number only.

(b) The Petitioner exhausted the state remedies regarding Ground Two.

(c) Direct appeal of Ground Two:

(1) This ground was raised on an appeal from the judgment of conviction.

-16-

(d) Post-Conviction Proceedings:

(1) Ground Two was not raised in a Motion For Relief From Judgment pursuant to Michigan Court Rule 6.500.

(e) Other Remedies: Aside from the direct appeal in the Michigan Court of Appeals and Michigan Supreme Court, the Petitioner did not use any other procedures to exhaust state remedies regarding Ground Two. See ¶¶ 8. and 9., _supra_.

## GROUND THREE

**THE PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH (DUE PROCESS CLAUSE) CONSTITUTIONAL RIGHTS WHEN JUDICIAL FACT FINDING INCREASED THE FLOOR OF THE PERMISSIBLE SENTENCE.**

(a)       SUPPORTING FACTS

When it came time for the sentence to be imposes, using the sentencing guidelines, the Petitioner was scored 40 OV points and 130 Prior Record Variable points which yielded a sentence range of 135 months – 225 months, or the FIII cell on the A-grid. However, the Petitioner's OV points and the corresponding guidelines range were based on the trial court's additional fact finding. OV 3 was scored at 10 points.

Without judicial fact finding, the Petitioner's OV total would have been 30 points, which would have changed his sentence range to 126 months to 210 months, or $10\frac{1}{2}$ years to $17\frac{1}{2}$ years instead of the 216 months to 360, or 18 years to 30 years.

A habeas corpus should issue in order to remedy the disparity of sentence range.

-17-

(b)  The  Petitioner  exhausted  the  state  remedies regarding Ground Three.

(c) Direct appeal of Ground Three:

(1)  This  ground  was  raised  on  an  appeal  from  the judgment of conviction.

(d) Post-Conviction Proceedings:

(1)  Ground  Three  was  not  raised  in  a  Motion  For Relief From Judgment pursuant to Michigan Court Rule 6.500.

(e)  Other  Remedies:  Aside  from  the  direct  appeals in  the  Michigan  Court  of  Appeals  and  Michigan  Supreme  Court, the  Petitioner  did  not  use  any  other  procedures  to  exhaust  state remedies regarding Ground Three. See ¶¶ 8. and 9., supra.


### GROUND FOUR

UNLESS THE PETITIONER IS GRANTED AN EVIDENTIARY HEARING REGARDING HIS INEFFECTIVE ASSISTANCE AND SENTENCE CLAIMS, HE WILL BE DENIED HIS  CONSTITUTIONAL  RIGHT  TO  DUE  PROCESS  OF  LAW  UNDER  THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

(a)              SUPPORTING FACTS

On  February  25,  2015,  the  Petitioner's  assigned  appellate counsel,  the  State  Appellate  Defender's  Office  (SADO)  submitted a  Motion  To  Remand  to  the  Michigan  Court  of  Appeals.  This  Motion sought  a  remand  of  the  case  back  to  the  trial  court  for  an evidentiary  hearing  regarding  the  ineffective  assistance  of counsel  claims  and  a  remand  for  resenting  concerning  the  issues in Grounds One and Three, supra.

-18-

On March 26, 2015, the Michigan Court of Appeals denied the Petitioner a remand for an evidentiary hearing. See Appendix B.

On February 11, 2016, SADO submitted an Application For Leave To Appeal to the Michigan Supreme Court. In that appeal, the Petitioner again ask the Supreme Court to remand the case back to the trial court for an evidentiary hearing regarding Grounds One and Three, _supra_. Instead of a remand for the requested evidentiary hearing, the Supreme Court merely denied the Petitioner leave to appeal. See Appendix C.

As noted by Grounds One and Three, _supra_, an evidentiary hearing is necessary to fully develop the issues.

When the state courts have declined to grant an evidentiary hearing on matters that require a testimonial record to be made, a federal court sitting in a habeas corpus proceeding may grant and conduct an evidentiary hearing in order to fully develop the grounds.

Therefore, the Petitioner requests that a habeas corpus evidentiary hearing be held and thereafter a writ of habeas corpus issue.

(b) The Petitioner exhausted the state remedies regarding Ground Three.

(c) Direct appeal of Ground Four:

(1) This ground was raised on an appeal from the judgment of conviction by way of Motion For Remand in the state courts.

-19-

(d) Post-Conviction Proceedings:

(1) Ground Four was not raised in a Motion For Relief From Judgment pursuant to Michigan Court Rule 6.500.

(e) Other Remedies: Aside from the direct appeals in the Michigan Court of Appeals and Michigan Supreme Court, the Petitioner did not use any other procedures to exhaust state remedies regarding Ground Four. See ¶¶ 8. and 9., supra.

13.

(a) All grounds for relief that have been raised in this petition have been presented to the highest state court having jurisdiction.

(b) There is no ground that has not been presented in any states or federal court.

14. The Petitioner has not previously filed any type of petition, application, or motion in a federal court regarding the conviction that the Petitioner is now challenging in this petition.

15. The Petitioner does not have any petitions, motions or appeals now pending in any court either state or federal for the judgment now being challenged.

16. The names, addresses, bar numbers and telephone numbers of the attorneys at all proceedings are listed below:

(a) At the Preliminary Examination was: Adil N. Haradhvala (P40095), 86 Clinton Street, Mount Clemens, Michigan 48043 (313) 255-5262.

(b) At the arraignment and plea was attorney Adel N. Haradhvala, supra.

(c) At the trial was attorney Adil N. Haradhvala, supra.

(d) At the sentencing was attorney Adil N. Haradhvala, supra.

(e) On appeal to the Michigan Court of Appeals and Michigan Supreme Court was Jessica Zimbelman (P72042), State Appellate Defender Office (SADO), 101 North Washington, 14th Floor, Lansing, Michigan 48913.

(f) There were no post-conviction proceedings other than the original direct appeal as of right and to the highest state court after the appeal as of right. See ¶¶ 8., and 9., supra.

(g) There were no post-conviction proceedings besides the direct appeal as of right to the Michigan Court of Appeals and request for leave to the Michigan Supreme Court. See ¶¶ 8., and 9., supra.

17. The Petitioner has no future sentences to serve after the Petitioner completes the sentences for the judgment that is now being challenged. See ¶¶ 3., and 5., supra.

18.

## TIMELINESS OF THE PETITION

The one-year statute of limitations as contained in 28 U.S.C. §2254(d) does not bar this habeas corpus petition because:

(1) The Petitioner was convicted on May 9, 2014.

(2) the Petitioner was sentenced on June 20, 2014.

(3) The decision of the Michigan Court of Appeals was December 17, 2015.

(4) The decision of the Michigan Supreme Court was September 6, 2016.

19. Therefore, the Petitioner is within the time period of the Antiterrorism And Effective Death Penalty Act of 1996 pursuant to 28 U.S.C. §2254(d).

## RELIEF REQUESTED

WHEREFORE, the Petitioner prays that this Court will grant the Petitioner a writ of habeas corpus and evidentiary hearing and any other relief which the Petitioner is entitled to in the interest of justice and law.


I declare under the penalty of perjury that the foregoing is true and correct.

-22-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT-SOUTHERN DIVISION

CHRISTOPHER DONALD TODD,

                    Petitioner,

                                        Civil Action
                                        No. _____

v

                                        Honorable: _____

DeWAYNE BURTON,

                    Respondent.
_____/          ORIGINAL

Christopher Donald Todd
Prisoner No. 266686
Richard Handlon Correctional Facility
1728 Bluewater Highway
Ionia, Michigan 48846
_____/

DeWayne Burton, Warden
Richard Handlon Correctional Facility
1728 Bluewater Highway
Ionia, Michigan 48846
_____/

Bill Schuette
Michigan Attorney General
G. Mennen Williams Building
525 West Ottawa Street (7th Floor)
Lansing, Michigan 48909
_____/

SEPARATE MEMORANDUM OF LAW IN SUPPORT OF:
PETITION UNDER 28 U.S.C. §2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

                    CHRISTOPHER DONALD TODD
                    NO. 266686
                    RICHARD HANDLON CORRECTIONAL FACILITY
                    1728 BLUEWATER HIGHWAY
                    IONIA, MICHIGAN 48846

# TABLE OF CONTENTS

PAGES

GROUNDS RAISED ------------------------------------- -ii-

INDEX OF AUTHORITIES ------------------------------- -iii- -v-

STATEMENT OF FACTS --------------------------------- -1- -3-

GROUND ONE ----------------------------------------- -4-

GROUND TWO ----------------------------------------- -14-

GROUND THREE --------------------------------------- -16-

GROUND FOUR ---------------------------------------- -17-

RELIEF REQUESTED ----------------------------------- -20-

## GROUNDS RAISED

### GROUND ONE

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH (DUE PROCESS CLAUSE) AMENDMENTS OF THE UNITED STATES CONSTITUTION WHEN TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE WHEN: (1) COUNSEL CONCEDED THE PETITIONER'S GUILT OF EVERY ELEMENT OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS CULPABILITY WITH A DEFENSE THAT WAS NOT GROUNDED IN LAW; (2) COUNSEL FAILED TO MOVE TO SUPPRESS A ROBBERY NOTE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE OF THE PETITIONER'S PROPERTY FROM HIS HOSPITAL ROOM; (3) COUNSEL FAILED TO OBJECT TO THE ADMITTANCE OF A NON-TESTIFYING LABORATORY SCIENTIST'S REPORT THAT THE PETITIONER'S DNA MATCHED DNA FOUND AT THE SCENE OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING TO OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE INVESTIGATION REGARDING THE REPORT WHEN HE DID NOT PREPARE IT, AND (4) WHEN COUNSEL'S ACCUMULATED ERRORS PREJUDICED THE PETITIONER.

Page -4-

### GROUND TWO

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT WHEN THE TRIAL COURT EMPANELLED A JURY WHOSE MEMBERS WERE REFERRED TO ONLY BY JUROR NUMBERS.

Page -14-

### GROUND THREE

THE PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH (DUE PROCESS CLAUSE) CONSTITUTIONAL RIGHTS WHEN JUDICIAL FACT FINDING INCREASED THE FLOOR OF THE PERMISSIBLE SENTENCE.

Page -16-

### GROUND FOUR

UNLESS THE PETITIONER IS GRANTED AN EVIDENTIARY HEARING REGARDING HIS INEFFECTIVE ASSISTANCE AND SENTENCE CLAIMS, HE WILL BE DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Page -17-

INDEX OF AUTHORITIES

PAGES

Alleyne v United States,
133 S Ct 2151 (2013) ------------------------------ 16

Blakely v Washington,
542 US 296 (2004) -------------------------------- 16

CHaney v Brown,
730 F2d 1334 (CA 10, 1984) ---------------------- 13

Crotts v Smith,
73 F3d 861 (CA 9, 1995) -------------------------- 7

Cooks v United States,
461 F2d 530 (CA 5, 1972) ------------------------- 6

DeShields v Shannon,
338 Fed Appx. 120, 2009, U.S. App LEXIS 15410 (2009)  13

Francis v Spraggins,
720 F2d 1190 (CA 11, 1983) ---------------------- 5

Groppie v Wisconsin,
400 US 505 (1971) -------------------------------- 14

Glover v United States,
531 US 198 (2001) -------------------------------- 16

Harris v Wood,
64 F3d 1432 (CA 9, 1995) ------------------------- 7

Joshua v DeWitt,
341 F3d 430 (CA 6 2003) -------------------------- 8

Jonns v Perini,
440 F2d 577 (CA 6, 1971) ------------------------ 17

Kimmelman v Morrison,
477 US 365 (1986) -------------------------------- 7

Lindstadt v Keane,
239 F3d 191 (CA 2, 2001) ------------------------ 5, 13

McMillan v Pennsylvania,
477 US 79 (1986) --------------------------------- 16

Mason v Scully,
16 F3d 38 (CA 2, 1994) ---------------------------- 9

Martin v Grossnans,
424 F3d 588 (CA 7, 2005) --------------------------- 9

Nelson v Estelle,
642 F2d 903 (CA 5, 1981) --------------------------- 6

Northrop v Trippett,
265 F3d 372 (CA 6, 2001) --------------------------- 8

Reynoso v Guirbino,
462 F3d 1099 (CA 9, 2006) ------------------------- 10

RICHEY v Mitcnell,
395 F3d 660 (CA 6, 2005) --------------------------- 5

Stolls v Perini,
427 F2d 1296 (CA 6, 1970) ------------------------- 18

Strickland v Washington,
466 US 668 (1984) -------------------------------- 11

Sanders v Ryder,
183 Fed Appx. 666 2006 U.S. App. LEXIS 16991 (2006)  10

Thomas v Varner,
428 F3d 491 (CA 3, 2005) --------------------------- 7

Townsend v Sain,
372 US 293 (1963) ----------------------------- 17-19

Williams v United States,
503 US 193 (1992) -------------------------------- 16

WIlson v Mazzuca,
570 F3d 490 (CA 2, 2009) --------------------------- 6

Walker v Engle,
703 F2d 959 (CA 6, 1983) ---------------------- 12, 13

United States v Sanchez,
74 F3d 562 (CA 5, 1996) ----------------------- 14, 15

United States v Krout,
66 F3d 1420 (CA 5, 1995) ---------------------- 14, 15

United States v Lowenstein,
1 F3d 452 (CA 6, 1993) ---------------------------- 16

Young v Zant, 677 F2d 792 (CA 11, 1982) ------------------ 5

<u>STATE</u>

MCL 750.529 ----------------------------------------------- 1

MCL 750.84 ------------------------------------------------ 1

MCL 750.224f ---------------------------------------------- 1

MCL 750.227b ---------------------------------------------- 1

People v Williams,
491 Mich 164 (2012) -------------------------------------- 11

## STATEMENT OF FACTS

The Petitioner stood trial in the Macomb County Circuit Court on charges of armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony. MCL 750.227b. The Petitioner was convicted on May 9, 2014, and sentenced on June 20, 2014 to concurrent prison sentences of 216 months to 360 months (18 years to 30 years), for the armed robbery, 36 months to 120 months (3 years to 10 years) for assault with intent to do great bodily harm less than murder, and 18 months to 60 months (1½ years to 5 years) for felon in possession of a firearm. These sentences were all consecutive to the mandatory 2 years for the two felony-firearm convictions which were concurrent to one another.

On September 17, 2013, the Petitioner went to the house of one James Butsinas (hereafter victim) with a plan to rob the victim of his gold, diamonds and money. Once inside the house, the Petitioner drew his pistol whereupon the victim lead the Petitioner to the upstairs bedroom where the victim reached under the bed and produced a pistol of his own. He shot the Petitioner three times. The two fought inside the bedroom, down the hallway, down the stairs, in the loving room and down to the basement.

-1-

After the struggle the Petitioner eventually ran out the door of the house to an awaiting getaway car and drove away.

A pedestrian called the police.

The victim was taken to the hospital where he had stitches placed in his head.

The Petitioner went to the hospital to have his wounds tended to. Hospital personnel contacted the police to say that they were attending to a man (the Petitioner) who had gunshot wounds.

When the police arrived at the hospital they recovered an envelope with a robbery note inside form the Petitioner's pants pocket. The police had no warrant to take or open the envelope. Trial counsel did not object to the admission of the envelope on search and seizure, Fourth Amendment grounds.

The suspected getaway car was impounded in the garage of the Warren Police Department (WPD). Blood samples were taken from inside the car by the police.

Detective Mel Nearing (Nearing) of the WPD took blood samples form the victim's house and the getaway car to the Michigan State Police (MSP). Trial counsel did not object to the MSP laboratory results being introduced at trial by Nearing instead of the MSP laboratory technicians who performed the DNA blood testing. Their reports were used as exhibits. Nearing testified that the DNA from specific blood samples from the victim's house and the alleged getaway car matched the Petitioner's DNA.

-2-

At trial, defense counsel conceded that the Petitioner was guilty of some of the crimes charged. However, counsel misstated the law to the jury* concerning the armed robbery charge to the effect that if the property (i.e., money, gold and jewelry) never left the victim's house, then there was no armed robbery because "armed robbery has two components. It has the assault and it has the larceny or the theft  of  property" and since the property never left the victim's house the most that the prosecutor could have charged the Petitioner with was "attempted armed robbery" not armed robbery.

Based upon trial counsel's erroneous legal advice regarding armed robbery, the Petitioner took the witness stand and admitted his guilt to all charges.

Trial counsel moved the court for a directed verdict of acquittal based upon the false legal promise that no property had left the victim's house, hence, no armed robbery. The trial court denied the motion.

After the Petitioner was convicted by the jury, the trial court used judicial fact-finding to increase the sentencing range of the Petitioner beyond permissible bounds.

---

* The jury was empanelled by juror number only.

-3-

<u>GROUND ONE</u>

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH (DUE PROCESS CLAUSE) AMENDMENTS OF THE UNITED STATES CONSTITUTION WHEN TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE WHEN: (1) COUNSEL CONCEDED THE PETITIONER'S GUILT OF EVERY ELEMENT OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS CULPABILITY WITH A DEFENSE THAT WAS NOT GROUNDED IN LAW; (2) COUNSEL FAILED TO MOVE TO SUPPRESS A ROBBERY NOTE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE OF THE PETITIONER'S PROPERTY FROM HIS HOSPITAL ROOM; (3) COUNSEL FAILED TO OBJECT TO THE ADMITTANCE OF A NON-TESTIFYING LABORATORY SCIENTIST'S REPORT THAT THE PETITIONER'S DNA MATCHED DNA FOUND AT THE SCENE OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING TO OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE INVESTIGATION REGARDING THE REPORT WHEN HE DID NOT PREPARE IT, AND (4) WHEN COUNSEL'S ACCUMULATED ERRORS PREJUDICED THE PETITIONER.

As noted by the Ground One headnote, <u>supra</u>, there are four separate aspects to this issue:

(1)

TRIAL COUNSEL CONCEDED THE PETITIONER'S GUILT OF EVERY ELEMENT OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS CULPABILITY WITH A DEFENSE THAT WAS NOT GROUNDED IN LAW.

(2)

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO MOVE TO SUPPRESS A ROBBERY NOTE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE OF THE PETITIONER'S PROPERTY FROM HIS HOSPITAL ROOM.

(3)

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO OBJECT TO THE ADMITTANCE OF A NON-TESTIFYING LABORATORY SCIENTIST'S REPORT THAT THE PETITIONER'S DNA MATCHED THE DNA FOUND AT THE SCENE OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING TO OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE INVESTIGATION REGARDING THE REPORT WHEN HE DID NOT PREPARE IT.

(4)

TRIAL COUNSEL'S ACCUMULATED ERRORS PREJUDICED THE PETITIONER.

The Petitioner will treat each aspect separately in the pages that follow.

(1)

TRIAL COUNSEL CONCEDED THE PETITIONER'S GUILT OF EVERY ELEMENT
OF EACH CHARGED OFFENSE, WHILE ATTEMPTING TO DIMINISH HIS
CULPABILITY WITH A DEFENSE THAT WAS NOT GROUNDED IN LAW.

As noted by Ground One, Section (1) of the Petition For
A Writ Of Habeas Corpus, the Petitioner claims that trial counsel
was ineffective when he conceded to the Petitioner's guilt and
when counsel failed to know the law regarding the charge of
armed robbery.

### CONCEDED GUILT

In the present case there could have been no viable
strategic reason, Young v Zant, 677 F2d 792 (CA 11, 1982) why
defense counsel would have conceded to the Petitioner's guilt,
either in his opening statement, Lindstadt v Keane, 239 F3d
191 (CA 2, 2001), or closing argument, Francis v Spraggins,
720 F2d 1190 (CA 11, 1983) to the jury.

When defense counsel conceded the Petitioner's guilt to
the jury, it essentially signaled that the prosecution had
satisfied its burden of proving the charge against the
Petitioner. Lindstadt v Keane, supra.

### COUNSEL DID NOT KNOW THE LAW

Defense counsel in this case was ineffective when he failed
to understand the elements of the charge of armed robbery. Richey
v Mitchell, 395 F3d 660 (CA 6, 2005).

-5-

Anytime defense counsel misinterpreted or misunderstood the law, ineffective assistance of counsel has been found. <u>Wilson</u> v <u>Mazzuca</u>, 570 F3d 490 (CA 2, 2009).

Lawyers are required to know the law. <u>Cooks</u> v <u>United States</u>, 461 F2d 530, 532 (CA 5, 1972). In <u>Nelson</u> v <u>Estelle</u>, 642 F2d 903, 908 (CA 5, 1981), the court held that:

> "[T]he failure of counsel to be aware of prior controlling precedents in even a single prejudicial instance might render counsel's assistance ineffective under the Sixth Amendment."

-6-

(2)

TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO MOVE
TO SUPPRESS A ROBBERY NOTE OBTAINED AS A RESULT OF AN ILLEGAL
SEARCH AND SEIZURE OF THE PETITIONER'S PROPERTY FROM HIS HOSPITAL
ROOM.

The police in this case seized a robbery note from the
Petitioner's pants pocket at the hospital without the use of
a warrant. This note was used as a key piece of prosecution
evidence. See Ground One, Section (2) of the enclosed Petition
For A Writ Of Habeas Corpus.

Trial counsel failed to move to suppress the robbery note
to exclude it from being introduced into evidence.

Under the circumstances of this case, when defense counsel
failed to make such an obvious and meritorious objection to
the tainted evidence which formed the basis of the state's case,
ineffective   assistance   of   counsel   seeped   into   the   trial.
Kimmelman v Morrison, 477 US 365 (1986); Thomas v Varner, 428
F3d 491 (CA 3, 2005).

A number of federal courts, sitting in a habeas corpus
proceeding, have found ineffective assistance of counsel when
counsel failed to file a motion to suppress on illegally seized
evidence grounds. Harris v Wood, 64 F3d 1432 (CA 9, 1995)
(Ineffective assistance of counsel found when defense counsel
failed to file a suppression of evidence motion); Crotts v Smith,
73 F3d 861 (CA 9, 1995) (Trial counsel was ineffective in failing
to object to highly prejudicial evidence which could have been

-7-

excluded if objection was made); <u>Joshua</u> v <u>DeWitt</u>, 341 F3d 430 (CA 6, 2003) (Counsel was ineffective in failing to litigate a Fourth Amendment issue which a "reasonable trial attorney would have raised." In addition, no strategy reasons could overcome the deficiency.)

In <u>Northrop</u> v <u>Trippett</u>, 265 F3d 372 (CA 6, 2001), defense counsel failed to file a meritorious motion to suppress physical evidence. The court held that counsel could not claim "strategic judgment" because it was difficult to imagine what tactical advantage could justify counsel's decision.

(3)

<u>TRIAL COUNSEL RENDERED DEFICIENT PERFORMANCE BY FAILING TO OBJECT
TO THE ADMITTANCE OF A NON-TESTIFYING LABORATORY SCIENTIST'S
REPORT THAT THE PETITIONER'S DNA MATCHED THE DNA FOUND AT THE
SCENE OF THE CRIME AND IN AN ALLEGED GETAWAY CAR, AND BY FAILING
TO OBJECT TO THE TESTIMONY OF THE OFFICER IN CHARGE OF THE
INVESTIGATION REGARDING THE REPORT WHEN HE DID NOT PREPARE IT.</u>


A police officer from the Warren Police Department (WPD)
was allowed to testify, without objection by defense counsel,
that the DNA in the blood samples from the victim's house and
from the getaway car matched the Petitioner's DNA. The problem
with this scenario is that the WPD officer was not the person
who performed the DNA blood testing, rather, it was the Michigan
State Police (MSP) laboratory technicians who performed the
testing and prepared the reports that were admitted into
evidence. Not only was the Petitioner denied compulsory process
and confrontation, but was denied the effective assistance of
counsel. See Ground One, Section (3) of the enclosed Petition
For A Writ Of Habeas Corpus.

In <u>Mason</u> v <u>Scully</u>, 16 F3d 38 (CA 2, 1994), the court held
that a trial lawyer is ineffective when he fails to object to
hearsay and Confrontation Clause grounds. Similarly, in <u>Martin</u>
v <u>Grosshans</u>, 424 F3d 588 (CA 7, 2005), the court held that
defense counsel performed deficiently for failing to make a
"proper objection" to inadmissible and prejudicial testimony
by prosecution witnesses.

Defense counsel in this case did not even interview the MSP DNA technicians who performed the DNA blood testing and prepared the reports used as exhibits. This standing alone supports an ineffective assistance of counsel claim. <u>Sanders v Ryder</u>, 183 Fed. Appx. 666, 2006 U.S. App. LEXIS 16991 (9th Cir. June 7, 2006) (Ineffective assistance of counsel has been found when defense counsel failed to interview the state's DNA forensic expert.)

Although trial counsel is typically afforded leeway in making tactical decisions regarding "trial strategy," counsel in this case cannot be said to have made a tactical decision without first procuring the information necessary to make such a decision. <u>Reynoso v Giurbino</u>, 462 F3d 1099 (CA 9, 2006).

-10-

(4)

## TRIAL COUNSEL'S ACCUMULATED ERRORS PREJUDICED THE PETITIONER

### PREJUDICE

The Petitioner was prejudiced under the <u>Strickland</u> v <u>Washington</u>[*] (<u>Strickland</u>) standards, either by the errors individually, or, by the cumulativeness of the errors in total.

First, the Petitioner was prejudiced when defense counsel conceded to the Petitioner's guilt on the armed robbery charge on a defense theory that was entirely ungrounded in the law, i.e., that if the Petitioner did not steal anything (complete the larceny) and left the victim's house without anything, then he could not have been charged, tried and convicted of armed robbery. Under Michigan law, however, "an attempted robbery or attempted armed robbery <u>with</u> <u>an</u> <u>incomplete</u> <u>larceny</u> is now sufficient to sustain a conviction under the robbery or armed robbery statutes." This has been the law in Michigan since 2012, [**] Two years <u>before</u> the Petitioner's trial in state court. See Ground One, section (1) of the enclosed Petition For Writ of Habeas Corpus.

Secondly, based upon the advise of defense counsel and his erroneous legal advice regarding the "no completed larceny, therefore, no armed robbery" theory, the Petitioner took the

---

[*]    466 US 668 (1984).

[**]   <u>People</u> v <u>Williams</u>, 491 Mich 164, 172 (2012).

-11-

witness stand and testified against himself as to all aspects of the prosecution's case. The Petitioner was his own worst enemy by testifying in this manner. This included testimony regarding the Petitioner's lengthy criminal history and his use of cocaine and heroin the day the crime was committed. See Ground One, section (1) of the enclosed Petition For Writ Of Habeas Corpus.

Third, the Petitioner was further prejudiced when defense counsel failed to file a motion to suppress the robbery note which corroborated the version told by the victim and contributed to the Petitioner's conviction. See Ground One, section (2) of the enclosed Petition For Writ Of Habeas Corpus.

Fourth, the Petitioner was again prejudiced when trial counsel never objected to the admission of the Michigan State Police (MSP) DNA analysis testified to by Detective Mel Nearing (Nearing) of the Warren Police Department (WPD) instead of the MSP technicians who did the DNA analysis and made their reports that were used as exhibits during the trial.

Not only was the Petitioner deprived of compulsory process and confrontation by defense counsel's inactions, but he was denied the effective assistance of counsel. See Ground One, section (3) of the enclosed Petitioner For Writ Of Habeas Corpus.

In Walker v Engle, 703 F2d 959, 962-963 (CA 6, 1983), the court held that errors that might not be so prejudicial as to amount to a deprivation of a fair trial when considered alone, may cumulatively produce an unfair and unconstitutional trial.

-12-

In 1984, one year after the decision of <u>Walker</u> v <u>Engle</u>, <u>supra</u>, the court in <u>Chaney</u> v <u>Brown</u>, 730 F2d 1334, 1356 (CA 10, 1984), stated that the effect of each error cannot be considered alone because the cumulative effect of each error in total may require a new trial where one error standing alone may not.

The court in <u>Lindstadt</u> v <u>Keane</u>, 239 F3d 191 (CA 2, 2001) ruled that defense counsel was ineffective by the "cumulative effect" of the errors.

Moreover, in <u>DeShields</u> v <u>Shannon</u>, 338 Fed Appx. 120, 2009 U.S. App. LEXIS 15410 (3d Cir. July 10, 2009), the court held that "cumulative effect of counsel's failures amounted to ineffective assistance of counsel even if failures, '[t]aken individually,' would 'perhaps be insufficient for us to conclude that his performance was constitutionally deficient.'"

-13-

## GROUND TWO

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT WHEN THE TRIAL COURT EMPANELLED A JURY WHOSE MEMBERS WERE REFERRED TO ONLY BY JUROR NUMBERS.

The Petitioner had a due process Fourteenth Amendment constitutional right to a fair and impartial trial. Groppie v Wisconsin, 400 US 505 (1971).

As noted by Ground Two of the enclosed Petition For A Writ Of Habeas Corpus, the state trial court referred to prospective jurors on the record only by badge numbers without taking steps to minimize tne prejudicial impact, such as giving a cautionary preliminary instruction that did not reflect on the guilt or innocence of the Petitioner.

In United States v Sanchez, 74 F3d 562, 564 (CA 5, 1996) (Sanchez) and United States v Krout, 66 F3d 1420, 1427 (CA 5, 1995) (Krout), those courts gave reasons why an anonymous jury (without names) could be impaneled, which included the following:

1. When needed to ensure against serious threat to jury safety. Sanchez.

2. The defendant's involvement in organized crime. Krout.

3. The defendant's past attempts to interfere with the judicial process or witnesses. Krout.

4. Extensive publicity could enhance the possibility that jurors names would become public and expose them to intimidation and harrassment. Krout.

The record is bare as to whether the trial court took into consideration any of the _Sanchez_ or _Krout_ reasons for impaneling a jury by juror number only.

The Petitioner should be granted the relief requested herein.

.

## GROUND THREE

THE PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH (DUE PROCESS) CONSTITUTIONAL RIGHTS WHEN JUDICIAL FACT-FINDING INCREASED THE FLOOR OF THE PERMISSIBLE SENTENCE.

As can be gleaned from Ground Three of the enclosed Petitioner For Writ Of Habeas Corpus, the state trial court engaged in judicial fact-finding that increased the floor of the range of permissible sentences in violation of the rule of Alleyne v United States, 133 S Ct 2151 (2013).

Without the judicial fact-finding the Petitioner's sentence for the armed robbery would have been 126 months to 210 months (10½ years to 17½ years), instead of the sentence of 216 months to 360 months (18 years to 30 years) that was actually imposed.

Sentencing matters fall under the Sixth and Fourteenth Amendments of the United States Constitution. Blakely v Washington, 542 US 296 (2004); McMillan v Pennsylvania, 477 US 79, 91 (1986).

A sentence must be imposed within the applicable guidelines, United States v Lowenstein, 1 F3d 452, 453 (CA 6, 1993); United States v Vanderbery, 201 F3d 805, 812 (CA 6, 2000), because sentencing guidelines have Fourteenth Amendment (due process) implications. Glover v United States, 531 US 198 (2001).

The corrective process for errors of sentencing guidelines is resentencing. Williams v United States, 503 US 193, 201 (1992).

-16-

## GROUND FOUR

**UNLESS THE PETITIONER IS GRANTED AN EVIDENTIARY HEARING REGARDING HIS INEFFECTIVE ASSISTANCE AND SENTENCE CLAIMS, HE WILL BE DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

As noted by Ground Four of the enclosed habeas corpus Petition, the State Appellate Defender's Office (SADO) moved the Michigan Court of Appeals and Michigan Supreme Court for a remand back to the trial court for an evidentiary hearing concerning the claims of ineffective assistance of counsel and the issue of sentencing. Both state courts refused the remand request.

When it comes to ineffective assistance of counsel issues that are not supported by the record, an evidentiary hearing is necessary to determine whether it was ineffective assistance of counsel or a tactical (strategy) decision. Johns v Perini, 440 F2d 577, 579 (CA 6, 1971).

The United States Supreme Court held in Townsend v Sain, 372 US 293, 312-313 (1963) that:

> "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas application did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts."

-17-

The court in <u>Stotts</u> v <u>Perini</u>, 427 F2d 1296 (CA 6, 1970) in citing <u>Townsend</u> v <u>Sain</u>, <u>supra</u>, held:

> "[W]here the state court has failed to make express findings which resolve critical factual disputes concerning a claimed constitutional deprivation, and an attempted reconstruction of implicit finds will involve speculation, the federal habeas corpus court must conduct an evidentiary hearing."

The United States Supreme Court gave six (6) situations in <u>Townsend</u> v <u>Sain</u>, <u>supra</u>, at 372 US at 313, where an evidentiary hearing must be granted and conducted in federal court for a state prisoner:

(1) The merits of the factual dispute were not resolved in the state hearing.

(2) The state factual determination is not fairly supported by the record as a whole.

(3) The fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing.

(4) There is a substantial allegation of newly discovered evidence.

(5) The material facts were not adequately developed at the state court hearing.

(6) For any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

-18-

As can be gleaned from the three Grounds of the habeas corpus petition, the Petitioner falls into all six (6) situations of <u>Townsend</u> v <u>Sain</u>, <u>supra</u>.

Therefore, the Petitioner seeks the relief requested.

## RELIEF REQUESTED

WHEREFORE, the Petitioner prays that this Court will grant the Petitioner a writ of habeas corpus and evidentiary hearing and any other relief which the Petitioner is entitled to in the interest of justice and law.

Respectfully Submitted.

Christopher Donald Todd
Prison No: 266686

Dated: *MARCH 7*   2017.

RICHARD HANDLON CORRECTIONAL FACILITY
1728 BLUE WATER HIGHWAY
IONIA, MI. 48846

UNITED STATES DISTRICT COURT
EASTERN DISTRICT-SOUTHERN DIVISION

CHRISTOPHER DONALD TODD,

                              Petitioner,

                                                    Civil Action
                                                    No. _____

v

                                                    Honorable:
                                                    _____

DeWAYNE BURTON,

                              Respondent.
_____/        ORIGINAL

Christopher Donald Todd
Prisoner No. 266686
Richard Handlon Correctional Facility
1728 Bluewater Highway
Ionia, Michigan 48846
_____/

DeWayne Burton, Warden
Richard Handlon Correctional Facility
1728 Bluewater Highway
Ionia, Michigan 48846
_____/

Bill Schuette
Michigan Attorney General
G. Mennen Williams Building
525 West Ottawa Street (7th Floor)
Lansing, Michigan 48909
_____/


                    A P P E N D I C E S


                         CHRISTOPHER DONALD TODD
                         NO. 266686
                         RICHARD HANDLON CORRECTIONAL FACILITY
                         1728 BLUEWATER HIGHWAY
                         IONIA, MICHIGAN 48846

APPENDIX A

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER DONALD TODD,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2015

No.  322587
Macomb Circuit Court
LC No.  2014-000217-FC

**Received**

DEC 2 2 2015

**SADO Lansing**

Before:  SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

     Defendant appeals as of right his convictions following a jury trial for armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, felon in possession of a firearm (felon in possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  Defendant was sentenced to concurrent prison sentences of 216 to 360 months for armed robbery, 36 to 120 months for assault with intent to do great bodily harm less than murder, and 18 to 60 months for felon in possession, all consecutive to the mandatory two years for the two felony-firearm convictions,[1] with no jail credit because he was on parole.  We affirm.

     On September 17, 2013, after an evening of drinking and drugs, defendant and Dennis Shepler came up with a plan to rob James Butsinas or his brother John Butsinas.  Shepler, who drove the get-away car, was familiar with the brothers.  Defendant arrived at James's home around 11:30 a.m. carrying an envelope and a semi-automatic gun in his pocket.  James answered the door, and defendant said, "I'm here to buy gold from your brother, John."  James was not expecting anyone, but John had brought people over to complete transactions at James's home before, so James let him in.  Once the door was closed, defendant removed his weapon and told James, "I want all your gold, diamonds, and money."  James told defendant it was upstairs and got defendant to follow him to his bedroom.  James told defendant it was under the bed. Instead, what was under the bed was James's revolver, which he pulled out and used to shoot defendant three times.  Defendant was shot in the left wrist and twice in the chest.  According to

---

[1] The two felony-firearm sentences were concurrent with each other.

James, defendant had already taken $2,000 and a gold bracelet from his dresser.  Defendant denied ever seeing or taking these items.

James and defendant began to struggle.  The clip fell out of defendant's gun, which he then used to strike James on the head multiple times, resulting in multiple large lacerations.  The struggle went throughout the home and even outside.  Once defendant broke free, he ran until he reached the car, and Shepler drove them away.  Although covered in blood, James followed on foot until shortly after the car drove away.

On appeal, defendant first claims that he received ineffective assistance of counsel. Whether a defendant has been deprived of the effective assistance of counsel is a mixed question of fact and law and is reviewed, respectively, for clear error and de novo.  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  "When no *Ginther* hearing has been conducted," as is the case here, "our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record."  *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

Defendant complains of three actions by defense counsel that he believes constituted ineffective assistance of counsel:  counsel's concession of certain elements and claims;  failure to suppress the "robbery note;" and failure to object to the admission of DNA evidence.  Based on our review of the record, we conclude that each of these actions constituted legitimate trial strategy and that defendant has not shown that he received ineffective assistance of counsel.

Defendant contends that trial counsel's defense was that he could not be found guilty of armed robbery because he never took anything.  However, defendant argues on appeal, such a defense was contrary to the law because armed robbery did not require completion of the larceny.  Certainly, there are elements of the record that support this contention.  However, we believe that this argument was not based on counsel's mistaken understanding of the law, but rather was one element of a broader defense—one of contrition and mercy.

Defense counsel's opening statement likened this incident to the title of the movie, "No Honor Among Thieves."  Defense counsel intimated that he was going to show the jury that James was a fence, i.e., also a criminal; that John owned a pawn shop that only paid people 20 to 30 percent of what things were worth, i.e., that he was ripping them off; and that Shepler was "a well-known burglar."  Defendant, on the other hand, was simply an unemployed man looking for a way to make money, whom Shepler played and convinced to go after John as an easy mark.  In other words, that while defendant did it, he was duped into it by bigger fish in the criminal pond.

Defense counsel's cross-examination focused on the discrepancy between James's testimony—that defendant said he was there to buy gold—and the reports of certain police officers that indicated that James said defendant said that he was there to sell gold, which would be more consistent with defendant being a fence and purchasing stolen goods.  He also focused on the discrepancy between James's testimony that defendant took the gold and necklace, and the officers' reports that James said he handed them to defendant.  Counsel noted that the DNA evidence, the hospital video, and everything else could not answer what defendant and James said to one another that day.  Defense counsel then focused on defendant's injuries, eliciting testimony about how much pain he had been in, how long he was in the hospital, and that the

-2-

police were unconcerned with defendant's injuries. In other words, defendant was not only duped, but he got the worst of it in terms of injuries as well.

The record is clear that defense counsel was attempting to discredit James and get the jury to conclude that James was just as much, if not more than, a criminal as defendant. Defense counsel continued to hammer home that defendant did not take anything and, even if he did, James handed it to him. And that defendant was just trying to get away with his life after he was shot—James was trying to stop him from getting away and could have killed defendant. Defense counsel was minimizing defendant's culpability and making it seem like defendant was the victim. Simply because the strategy did not work did not make counsel ineffective for having attempted it. *People v Heft*, 299 Mich 69, 84; 829 NW2d 69 (2012). In light of the plethora of evidence against defendant, and defendant's decision to testify, defense counsel did the best he could with what he had.

Next, defendant argues that counsel was ineffective for failing to seek suppression of the robbery note because it was seized without a warrant. Plaintiff argues that, even if the search did not fall under any recognized exception to the warrant requirement, the inevitable discovery rule would apply. See *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009). We agree. Under the inevitable discovery doctrine admission of evidence obtained from an unconstitutional search is admissible if a preponderance of the evidence shows "that the items found would have ultimately been obtained in a constitutionally accepted manner." *Id.* at 439-440. Here, defendant was arrested at the hospital based on probable cause that he was the suspect in the armed robbery. Accordingly, the search of defendant's pants would have been valid as a search incident to arrest, or an inventory of his property upon arrest. And because the note was admissible in either case, counsel was not ineffective for failing to raise a futile objection to it, *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), or for failing "to advocate a meritless position," *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Lastly, defendant contends that his counsel was ineffective for failing to object both to the admission of a non-testifying lab scientist's DNA report and to the testimony of the officer in charge regarding the report because he did not prepare it. However, defense counsel stipulated at the pretrial hearing that the blood in the house and the car was defendant's because he did not want to wait another six months for the DNA results to come back. Therefore, defendant waived any claims of nonconstitutional evidentiary error concerning the admission of the DNA evidence. See *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

Defendant claims that his counsel only stipulated to his DNA matching that in the house. However, the record suggests otherwise. During a special pretrial hearing regarding waiting on defendant's DNA tests and seeking a joinder for Shepler's case, the prosecution noted that defense counsel indicated a willingness to stipulate to the DNA evidence. Although there is no affirmative statement on the record that defendant was willing to stipulate that the blood in the car was his, counsel's statement that it was Shepler's attorney who would have a problem with the car DNA permitted the trial court to infer that its denial of a joinder of the trials would remove any obstacles to the stipulation that defendant's DNA was in the car. Defendant is precluded from objecting to any error created by his attorney's inference to the trial court that defendant was willing to stipulate that the DNA in the car was his. *People v Witherspoon (After Remand)*, 257 Mich App 329, 333; 670 NW2d 434 (2003) ("[A]n appellant may not benefit from

-3-

an alleged error that the appellant contributed to by plan or negligence."). Having agreed to stipulate that the blood was defendant's, any objections to the admission and testimony regarding the DNA results matching defendant was effectively waived.[2]

Defendant also waived his Sixth Amendment right of confrontation as it related to the DNA laboratory report. See *People v Buie*, 491 Mich 294, 315; 817 NW2d 33 (2012) (holding that the right to confrontation may be waived by trial counsel as long as counsel's actions constitute reasonable trial strategy, which is presumed, and the defendant does not object on the record). Here, defense counsel affirmatively stated that there were no objections to admission of the report, and defendant did not object to defense counsel's waiver on the record. Thus, even without the stipulation, this record shows complete waiver of this issue.

Even so, defendant's waiver of the claim did not preclude a claim of ineffective assistance of counsel. *Buie*, 491 Mich at 315 n 13. Nevertheless, we conclude that defense counsel's stipulation to the DNA evidence was a conscious and reasonable trial strategy. First, the record reflects that defendant wanted to stipulate to the DNA evidence in order for his trial to move forward. Second, there was no question defendant was in the house or vehicle, so there was no reason to dispute that the DNA was defendant's. Confronted with what would have inevitably been unfavorable testimony from an expert laboratory analyst, defense counsel permitted its admission, which allowed the defense to portray an air of confidence and prevented an additional prosecution witness to testify at trial. See *State v Davis*, 116 Ohio St 3d 404, 450-451; 880 NE2d 31 (2008). This strategic decision was not unreasonable. Indeed, in light of the sheer volume of evidence against defendant, there is no indication that defense counsel's failure to challenge the DNA evidence prejudiced the outcome of the trial.

Accordingly, we conclude that defendant has failed to show any mistakes in the record that constitute ineffective assistance of counsel. *Mack*, 265 Mich App at 125.

Defendant next argues that his due process rights were violated because the trial court empaneled an anonymous jury by referring to jurors only by their juror number. Because the

---

[2] Furthermore, the date of the special pretrial hearing was April 29, 2014. The reports that were entered were dated March 5, 2014 and March 27, 2014, and defendant does not argue that he was unaware of these reports or their contents. Given their dates, the reports that were entered could not have been the DNA reports on which the prosecution wanted to hold up trial. Rather, the trial testimony makes clear that these reports only determined that the DNA in the car, on the sidewalk, and in the house were from the same person, and that DNA also matched a profile in CODIS linked to a "Christopher Donald Todd," which was the same name as defendant. The DNA tests on which the prosecutor was waiting were to determine whether a swab taken from defendant matched that DNA—i.e. was defendant the same Christopher Donald Todd as was found in CODIS. Under these circumstances, defendant's stipulation that it was his DNA found in the house necessarily meant that it was his DNA found in the car and on the street because the admitted report provided that all of the swabs from different locations had the same DNA.

-4-

issue is unpreserved, this court's review is for plain error affecting defendant's substantial rights. *People v Fackelman*, 489 Mich 515, 537; 802 NW2d 552 (2011).

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). However, the reference to jurors at trial by number rather than by name does not constitute an anonymous jury. *Id.* at 523.

Defendant references several cases from foreign jurisdictions, but this Court has previously considered those cases and determined that *Williams* was not wrongly decided. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). Although defendant cites two newer cases in his request that we find *Hanks* was wrongly decided, the remedy suggested in those cases is that the trial court should explain that reference to jurors by number rather than name was general practice. Our review of the record shows that the trial court did precisely that.

Finally, defendant argues that his sentence floor was unconstitutionally influenced by judicial fact-finding. Even though defense counsel on appeal challenged the scoring of the guidelines on *Alleyne*[3] grounds, because this challenge was not made at the time of sentencing, the issue is unpreserved. *People v Lockridge*, 498 Mich 358, 365; ___ NW2d ___ (2015). Unpreserved errors are reviewed for plain error affecting defendant's substantial rights. *Id.* at 392.

Defendant argues that he is entitled to resentencing because his OV scores were determined by judicial fact-finding. Where facts admitted by the defendant or found by the jury "were sufficient to assess the minimum number of OV points necessary for defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," a defendant did not suffer any prejudice and "there is no plain error and no further inquiry is required." *Id.* at 394. However, where the facts found by the jury were insufficient to assess the minimum number of OV points in the sentencing grid, "an unconstitutional constraint actually impaired the defendant's Sixth Amendment right," and in the absence of an upward departure, defendants "who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment . . . can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* at 395.

OV 1 was scored at 15 points for "a firearm was pointed at or toward a victim . . . ." MCL 777.31(1)(c). No judicial fact-finding occurred in the scoring of this variable because defendant himself testified that "I pulled out a handgun and I told him that I wanted the jewelry and the money." The same testimony also supports the score for OV 2, which was scored five points for "[t]he offender possessed or used a pistol . . . ." MCL 777.32(1)(d).

OV 3, MCL 777.33, is scored for physical injury to a victim. Here, 10 points were scored for "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Whether these facts were found by the jury or admitted by defendant is a closer question. Actual

---

[3] *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

-5-

injury is not an element of any of defendant's convictions. See *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013) (explaining that a defendant's actions can provide circumstantial evidence of his intent to commit great bodily harm, and that "it is not necessary for any actual injury to occur."). Thus, if OV 3 is scored solely on James's injuries, such a score involved judicial fact-finding.

However, when OV 3 is scored for defendant's injuries, a score of 25 points is permitted. MCL 777.33(1)(c) ("Life threatening or permanent incapacitating injury occurred to a victim"). In *People v Laidler*, 491 Mich 339; 817 NW2d 517 (2012), our Supreme Court determined that, for purposes of OV 3, a coperpetrator could be a victim. The Court noted that OV 3 had no definition of victim and concluded, for purposes of OV 3 only, that "a 'victim' is any person who is harmed by the defendant's criminal actions." *Id.* at 348. The Court further noted its belief that the definition of victim "does not limit the source of harm and does not preclude self-inflicted harm." *Id.* at 348 n 5. Finally, the Court expressly stated that the statute's language made clear that "offenders" and "victims" are not mutually exclusive. *Id.* at 351.

Defendant's testimony is sufficient to uphold the score of 10 points. He testified that he was shot in the wrist and twice in the chest around his heart. He testified that blood was "squirting" from his wrist and "gushing" out of his chest, and blood was filling up his lungs; "I was basically drowning in my own blood." Defendant testified that one bullet went completely through him and one shattered one of his ribs, which "exploded and fragmented into [his] lungs," and he had to have the upper lobe of his left lung removed. His arm was broken, there were muscles torn, arm ligaments and tendons were damaged, and the bullet lodged into the outside bone of his arm. Defendant testified that it took a couple of months before he could pick up something simple and that it "still hurts. It's still painful."

Because defendant's admissions and uncontested OV 13 score support a total OV score of 55 points, which leaves him in the F-III range, MCL 777.62, defendant did not suffer any prejudice and "there is no plain error and no further inquiry is required." *Id.* at 395.

Affirmed.

/s/ David H. Sawyer
/s/ Mark T. Boonstra

-6-

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER DONALD TODD,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2015

No.  322587
Macomb Circuit Court
LC No.  2014-000217-FC

Before:  SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

BECKERING, J. (*concurring*).

        I concur in result only.

                                                /s/ Jane M. Beckering

APPENDIX B

## Court of Appeals, State of Michigan

## ORDER

People of MI v Christopher Donald Todd

Docket No.     322587

LC No.     2014-000217-FC

Pat M. Donofrio
Presiding Judge

Kathleen Jansen

Deborah A. Servitto
Judges

The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is DENIED. Defendant-appellant has not properly demonstrated that further factual development of the record or an initial ruling by the trial court is necessary at this time in order for this Court to address the issues on appeal.  However, defendant-appellant has now preserved the objection to the scoring of the sentencing guidelines raised in his motion to remand.  MCR 6.429(C).

Presiding Judge

**Received**

APR  1 2015

**SADO Lansing**

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

MAR 2 6 2015
Date

Chief Clerk

APPENDIX C

# Order

Michigan Supreme Court
Lansing, Michigan

September 6, 2016

Robert P. Young, Jr.,
Chief Justice

153175

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v                                                    SC: 153175
                                                     COA: 322587
CHRISTOPHER DONALD TODD,                             Macomb CC: 2014-000217-FC
        Defendant-Appellant.

_____/

On order of the Court, the application for leave to appeal the December 17, 2015 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

Received

SEP  9 2016

SADO Lansing



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

September 6, 2016



s0829

Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT-SOUTHERN DIVISION

CHRISTOPHER DONALD TODD,

                    Petitioner,
                                        Civil Action
                                        No.
    v
                                        Honorable:

DeWAYNE BURTON,
                                        _____
                    Respondent.
_____/          ORIGINAL


## PROOF OF SERVICE

    CHRISTOPHER DONALD TODD, states that he is the Petitioner
in the within cause of action and that on the date of this
Proof Of Service, he did cause to mail in a properly addressed
envelope with first-class postage fully prepaid, via the United
States Postal Service, by use of the Michigan Department of
Corrections Disbursement Authorization for legal mail (EXPEDITED
LEGAL MAIL - PRISONER, form CSJ-318, 05/02, 4835-3318), and
the Federal Prisoner Mail Box Rule, Huston v Lack, 487 US 266
(1988); Brand v Motley, 526 F3d 921, 925 (CA 6, 2008); Cook
v Stegall, 295 F3d 517, 521 (CA 6, 2002) a: Petition Under
28 U.S.C. §2254 For Writ Of Habeas Corpus By A Person In State
Custody; Memorandum Of Law In Support Of Petition Under 28
U.S.C. §2254 For Writ Of Habeas Corpus By A Person In State
Custody; Exhibits, and this Proof Of Service unto:


1 of 2

Clerk of the Court
United States District Court
Eastern District-Southern Division
231 West Lafayette Boulevard
Detroit, Michigan 48226
(1 original and 2 copies of each pleading and paper.)

Bill Schuette
Michigan Attorney General
G. Mennen Williams Building
7th Floor
525 West Ottawa Street
Post Office Box 30212
Lansing, Michigan 48909
(1 copy of each pleading and paper.)


      I declare under the penalty of perjury that the foregoing
is true and correct to the best of my information, knowledge
and belief.




                          Respectfully Submitted.



                          Christopher Donald Todd
                          No. 266686
                          Richard Handlon -
                          Correctional Facility
                          1728 Bluewater Highway
Dated: *MARCH 7* , 2017.   Ionia, Michigan 48846




                         2 of 2



US POSTAGE & FEES PAID
$007.20°

3-8-17 (MA)

(Ps)

RECEIVED
MAR 1 0 2017
CLERK OFFICE
DETROIT

CLERK OF COURT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT - SOUTHERN DIVISION

231 WEST LAFAYETTE BOULEVARD

FIFTH FLOOR

DETROIT, MI 48234

SCANNED

CHRISTOPHER D TODD
DOC # 266686
WOODLAND CORRECTIONAL FACILITY
9228 BLUEWATER HIGHWAY
IONIA, MICHIGAN 48846

U.S. MARSHALS

UNITED STATES
POSTAL SERVICE®
USPS TRACKING #

9114 9014 9645 0110 8328 99

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| Case No. 17-10788 | **Judge:** Gershwin A. Drain | **Magistrate Judge:** Patricia T. Morris |

**Name of 1ˢᵗ Listed Plaintiff/Petitioner:**

CHRISTOPHER DONALD TODD

**Name of 1ˢᵗ Listed Defendant/Respondent:**

DEWAYNE BURTON

**Inmate Number:** 266686

**Additional Information:**

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**

Richard A. Handlon Correctional Facility

1728 Bluewater Highway
Ionia, MI 48846
IONIA COUNTY

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☒ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☐ IFP *In Forma Pauperis*
- ☒ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   ☐ Yes   ☒ No
   ➢ **If yes, give the following information:**
   Court: _____
   Case No: _____
   Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   ☐ Yes   ☒ No
   ➢ **If yes, give the following information:**
   Court: _____
   Case No: _____
   Judge: _____